DECISION
{¶ 1} In this original action, relator, Jennie Saylor, seeks a writ of mandamus compelling respondent, the Industrial Commission of Ohio, to vacate its March 22, 2005 order denying her R.C. 4123.56(B) working wage loss compensation beginning June 13, 2004, and enter a new order that grants relator's application.
 {¶ 2} The above matter was referred to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. After hearing, the magistrate issued a November 12, 2005 decision based upon findings of fact and conclusions of law recommending that this court grant relator's requested writ of mandamus. (Attached as Appendix A.) No objections have been filed in response to the magistrate's decision.
 {¶ 3} This court conducted a full review of this matter pursuant to Civ.R. 53(E)(4). We conclude that the magistrate properly determined the appropriate facts and applied the relevant law to said facts in his decision. We adopt the magistrate's findings of fact, conclusions of law and ultimate decision. Accordingly, the Industrial Commission of Ohio is ordered to vacate its March 22, 2005 order and enter a new order that either grants or denies relator's claim for wage loss compensation.
Writ of mandamus granted.
Petree and Whiteside, JJ., concur.
Whiteside, J., retired of the Tenth Appellate District assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Jennie Saylor, : Relator, : :
v. : No. 05AP-570 :
Industrial Commission of Ohio : (REGULAR CALENDAR) and 99 Centers, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on November 15, 2005 Harris Burgin, L.P.A., and Andrea L. Burns, for relator.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 4} In this original action, relator, Jennie Saylor, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her R.C. 4123.56(B) wage loss compensation and to enter an order granting said compensation.
Findings of Fact:
 {¶ 5} 1. On September 30, 2002, relator sustained an industrial injury while employed as a store manager for respondent 99 Centers, Inc., a state-fund employer. The industrial claim is allowed for "sprain/strain bilateral other; fracture femur intrcaps bilateral; nonunion fracture left," and is assigned claim number 02-861691.
 {¶ 6} 2. Following bilateral hip replacement surgery, relator returned to work as a store manager on April 1, 2004.
 {¶ 7} 3. On June 11, 2004, relator visited her physician of record, Robert J. Hill, D.O., who noted:
She presents today for follow-up regarding her hips. She is six months status post total hip replacement. She is doing well and having very little pain, soreness and discomfort. She is working between 15 to 16 [hours] per day and that seems to be causing her a fair amount of problems. The groin gets sore.
I have discussed this with her and with bilateral hip replacements I think it will be very difficult for her to function in that extent of time. I have recommended putting her on permanent restrictions of less than 40 [hours] per week. I have recommended that she limit her activities and have sit down breaks. I will see her back at her regularly scheduled follow-up visits.
 {¶ 8} 4. Following her June 2004 office visit with Dr. Hill, relator stepped down to a lesser paying assistant manager position under circumstances that are in dispute here. The store manager position was salaried. The assistant manager position is hourly paid.
 {¶ 9} 5. On or about August 24, 2004, relator filed a C-140 application for working wage loss compensation. In support, Dr. Hill completed the medical report form that must accompany the application. Indicating in response to the form's query that he had last examined relator on July 15, 2004, Dr. Hill listed the following temporary restrictions: "No more than 40hrs a week, and must be able to stop [and] sit when needed and cannot drive longer than 15 minutes without stopping to stretch if needed."
 {¶ 10} 6. The record contains a MEDCO-14 form captioned "Physician's Report of Work Ability" completed by Dr. Hill on June 30, 2004. On the June 30, 2004 MEDCO-14 form, Dr. Hill certified that beginning June 11, 2004, the following temporary restrictions apply: "Light duty — 40 hrs per week or less. Must have periods of sitting down when needed." The record contains another MEDCO-14 form completed by Dr. Hill on July 23, 2004. Indicating that July 15, 2004 is the date of the last examination, Dr. Hill wrote: "No more [than] 40 hours a week, and must be able to stop [and] sit when needed and cannot drive longer than 15 minutes without stopping to stretch if needed."
 {¶ 11} 7. On September 28, 2004, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order granting wage loss compensation beginning June 13, 2004. The bureau's order explains:
This decision is based on:
The allowed conditions in this claim, the C140 application filed 08/24/2004 which lists the injured worker's physical restrictions, the employer's inability to accommodate the injured worker's restrictions in her former position and therefore demoting her to an hourly employee, the pay stubs on file and the remaining evidence on file.
 {¶ 12} 8. The employer administratively appealed the bureau's order.
 {¶ 13} 9. Following a December 14, 2004 hearing, a district hearing officer ("DHO") issued an order that affirmed the bureau's order. The DHO order explains:
* * * [T]he injured worker returned to employment with the employer of record and suffered a wage loss as a direct result of the allowed industrial injury dated 09/30/2002. Specifically, the District Hearing Officer finds that the injured worker has physical restrictions as set forth in the office note of Dr. Robert Hill dated 06/11/2004 and his subsequent MEDCO-14 report and medical reports. The restrictions set forth by Dr. Hill prevent the injured worker from performing the duties of her former position of employment. These restrictions include: no more than 40 hours of [sic] week and the injured worker must be able to stop and sit when needed and can not drive longer than 15 minutes without stopping to stretch as needed.
* * * [T]he injured worker returned to employment on 06/14/2004 as a[n] assistant store manager, a position which was within the physical restrictions set forth by Dr. Hill. The District Hearing Officer further finds that the injured worker's earnings as an assistant manager were less than the injured worker's wages at the time of the industrial injury and that this wage loss is a result of the medical impairments that are causally related to the allowed industrial injury dated 09/30/2002.
* * *
Therefore, it is hereby the order of the District Hearing Officer that wage loss compensation is granted from 06/14/2004 through 12/14/2004. Wage loss compensation may continue upon submission of evidence which documents an ongoing wage loss due to the allowed industrial injury dated 09/30/2002.
* * *
This order is based upon the office note of Dr. Robert Hill dated 06/11/2004, the medical report of Dr. Robert Hill filed with the C-140 application, and the MEDCO-14 reports of Dr. Robert Hill dated 06/30/2004 and 07/23/2004, the pay stubs contained in the claim file, O.R.C. 4123.56(B), O.A.C. 4125-1-01, and the evidence adduced at hearing.
 {¶ 14} 10. The employer administratively appealed the DHO order of December 14, 2004.
 {¶ 15} 11. Following a February 22, 2005 hearing, a staff hearing officer ("SHO") issued an order vacating the DHO's order. The SHO order explains:
It is the order of the Staff Hearing Officer that the injured worker's C-140 application for wage loss benefits, filed 08/23/2004, is denied. The Staff Hearing Officer finds, that the injured worker on 06/11/2004, took a voluntary step down to assistant manager, giving as the reason, that, she was working too many hours. The Staff Hearing Officer finds that the injured worker did not submit evidence of medical restrictions from Dr. Hill opining the injured worker to be incapable of working 40 hours or more.
The Staff Hearing Officer does find that the injured worker's physician of record, Dr. Hill, signed medical restrictions on 06/30/2004, which did restrict the injured worker's ability to work 40 hours or more. The Staff Hearing Officer finds that the injured worker submitted those medical restrictions on 07/01/2004, to the employer.
The Staff Hearing Officer finds also that the injured worker had been working her position of employment as the manager from her return to work of 04/01/2004 until 06/11/2004. The Staff Hearing Officer finds for the period from 04/01/2004 to 06/11/2004 the injured worker had submitted medical restrictions against lifting only.
The Staff Hearing Officer finds that the employer was capable of setting a work week of 40 hours or less for the injured worker, having done so for previous managers, if medical restrictions against working 40 hours or more had been given at the time of her voluntary step down.
The Staff Hearing Officer therefore denies the injured worker's C-140 application for the payment of wage loss beginning 06/12/2004, or in the alternative 07/01/2004, and continuing, based upon the injured worker's voluntary step down to assistant manager.
It is therefore the order of the Staff Hearing Officer that the injured worker did a voluntary step down to assistant manager for reasons unrelated to the industrial injury.
This order is based upon the facts stated within and the testimony of District Manager Pack, the testimony of the injured worker which is contradicted by dated medical evidence of the medical restrictions submitted by Dr. Hill signed 06/30/2004, the testimony of Ms. Deno and OAC 4125-1-01.
 {¶ 16} 12. Relator filed a notice of appeal from the SHO order of February 22, 2005. In support of her notice of appeal, relator submitted her affidavit executed March 3, 2005, a written statement dated March 3, 2005 from Angel Reinhard, and a written statement dated March 3, 2005 from Julie Gibbons Hayes.
 {¶ 17} 13. Relator's affidavit executed March 3, 2005 states:
[Four] I underwent a bilateral hip replacement in October of 2002. Then, in December of 2003, I underwent a revision of the left hip replacement, and the hardware was removed.
[Five] I was off work until March 31, 2004. I returned to my position of employment with 99 Centers on April 1, 2004.
[Six] Initially, I was released to full duty by my physician, Dr. Robert J. Hill, on a trial basis, to see how much I could handle.
[Seven] My position at 99 Centers at that time was Store Manager. This position required me to work a minimum of 45 hours, but I generally worked more than 45 hours per week. In fact, sometimes I worked approximately 15-16 hours per day, 5-6 days per week.
[Eight] My job duties required a lot of walking, standing, cashier duties, and stocking.
[Nine] Leading up to June of 2004, I was experiencing severe pain in the groin and hip area.
[Ten] I saw Dr. Hill on Friday, June 11, 2004, who because of my continuing difficulties, restricted me to working 40 hours per week, and indicated that I must be able to sit when necessary.
[Eleven] On June 11, 2004, I faxed [a] copy of my restriction form to our main office. I faxed one to Brian Gillan's attention. Brian Gillan is the owner of the store.
[Twelve] Either June 11, 2004, or June 12, 2004, I emailed Brian Gillan, explaining my doctor had restricted me, and that the hours that I worked as a Store Manager were prohibited.
[Thirteen] Monday, June 14, 2004, Brian Gillan called me to let me know he would have a new store manager at my store within two weeks. He did not offer to accommodate my Store Manager position to my restrictions.
[Fourteen] On Monday, June 21, 2004, a new store manager was put in my store.
[Fifteen] I am still employed at 99 Centers, currently as an Assistant Manager.
[Sixteen] At no time after receiving my restrictions from Dr. Hill did I "resign" my position as Store Manager.
 {¶ 18} 14. The written statement of Angel Reinhard, dated March 3, 2005, states:
On June 11, 2004, I was present when Jennie Saylor's restrictions were faxed to the Corporate office. An e-mail was also sent within the next day or two, to the owner of the 99 Center, stating that Jennie Saylor could no longer work the required 45 hours a week; due to her doctor's restrictions that were put in place on June 11, 2004.
 {¶ 19} 15. The written statement of Julie Gibbons Hayes, executed March 3, 2005, states:
My first day of employment with the 99 Center was June 7th, 2004. Several days later it was explained to me on June 21st, 2004 I would begin to work at Store 5 Hamilton to replace Jennie Saylor.
I was hired in to work at a different location than I am currently at.
 {¶ 20} 16. On March 22, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO order of February 22, 2005.
 {¶ 21} 17. On June 3, 2005, relator, Jennie Saylor, filed this mandamus action.
Conclusions of Law:
 {¶ 22} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 23} The syllabus of State ex rel. Noll v. Indus. Comm.
(1991), 57 Ohio St.3d 203, states:
In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision.
 {¶ 24} The commission, through its SHO order of February 22, 2005, denied wage loss compensation beginning June 12, 2004, the day following relator's June 11, 2004 office visit to Dr. Hill. The commission found that relator took a voluntary step down to assistant manager, giving as her reason that she was working too many hours. Based upon a finding that the June 11, 2004 restrictions were not submitted to the employer until July 1, 2004, a date subsequent to the step down, the commission concluded that the step down was unrelated to the industrial injury.
 {¶ 25} Analysis beings with an observation of what the commission did not decide or determine. The commission did not determine that Dr. Hill's June 11, 2004 restrictions were unrelated to the industrial injury or that the restrictions lacked credibility in any way. In fact, there was no medical evidence in the record challenging Dr. Hill's June 11, 2004 medical restrictions.
 {¶ 26} The commission apparently accepted as factual that relator often worked more than 40 hours per week as the store manager.
 {¶ 27} The commission's order suggests or indicates that hearing testimony from employer witnesses support the conclusion that the employer was willing to set relator's weekly hours as store manager to 40 or less if the medical restrictions had been submitted to the employer at the time of relator's request for a step down.
 {¶ 28} The commission's order seems to suggest a scenario in which relator allegedly asked her employer permission to step down to an assistant manager position without mention of her new medical restrictions. The theory being that, if relator asked for a step down, giving as her reason that she worked too many hours, the step down cannot be related to the industrial injury if relator failed to mention that her injury was restricting her hours.
 {¶ 29} Undeniably, a claimant can step down to a position demanding fewer hours for reasons related to an industrial injury or for reasons unrelated to an industrial injury. Here, however, at first blush, because the new restrictions were contemporaneous with the step down, it seems implausible that relator would not mention the restrictions as a reason for the step down.
 {¶ 30} Nevertheless, under the commission's suggested scenario, relator's alleged failure to disclose the restrictions to her employer could be viewed as her unilateral decision to step down to a lesser paying (and perhaps less stressful) job regardless of her employer's willingness to accommodate her new restrictions.
 {¶ 31} The problem here with the commission's order is that the above-described scenario that might conceivably support denial of the wage loss claim is not supported by a description of the testimony that might support the factual scenario.
 {¶ 32} In the final paragraph of the order, the commission cites to the testimony of district manager Pack, the testimony of Ms. Deno and the testimony of relator which is said to be contradicted by "dated medical evidence" from Dr. Hill "signed on 06/30/2004."
 {¶ 33} Because the administrative proceedings were not recorded, there is no transcript of the proceedings and testimony to review. Without at least a summary or description of the relied upon testimony in the commission's order, this court cannot review the testimony to determine whether it supports the commission's findings. Moreover, the commission even failed in its order to describe relator's testimony that is said to be contradicted by Dr. Hill's June 30, 2004 report.
 {¶ 34} Merely citing to the names of the employer's witnesses fails to provide the some evidence necessary to support the commission's findings. See [State ex rel.] Hillshire Farms Kahn's v. Indus. Comm. (2001), Franklin App. No. 00AP-355. Moreover, without some description of the testimony relied upon, the commission's order fails to provide the reasoning underNoll, supra.
 {¶ 35} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent commission to vacate its order denying relator's request for R.C. 4123.56(B) wage loss compensation, and in a manner consistent with this magistrate's decision, enter a new order that either grants or denies relator's claim for wage loss compensation.